UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**SHARON JONES, et al**     **CIVIL ACTION**

**VERSUS**     **NO. 11-681-SDD-RLB**

**GENERAL GROWTH
PROPERTIES, INC., et al**

## ORDER ON PLAINTIFFS' MOTION TO COMPEL INSPECTION

Before the Court is Plaintiffs' Motion to Compel ("Motion") Defendants to permit "a full and complete inspection of the escalator and accident scene" at issue in Plaintiffs' Complaint. (R. Doc. 26-1 at 1). Plaintiffs filed their Motion on June 29, 2012. (R. Doc. 26). Defendants, General Growth Properties, Inc., Mall of Louisiana Holding, LLC and Liberty Mutual Insurance Company ("Defendants"), timely opposed the Motion on July 18, 2012. (R. Doc. 29). Defendant, Schindler Escalator Company ("Schindler"),[1] filed its Opposition on July 19, 2012. (R. Doc. 30).[2]

**I.     BACKGROUND**

This personal injury action brought by Sharon Jones and Roy Jones ("Plaintiffs") arises out of an incident occurring on a down escalator at the Mall of Louisiana. (R. Doc. 1 at 2). Sharon Jones alleges: "Upon accessing the [down escalator at the Mall of Louisiana] her hand

---

[1] The Court notes the discrepancy between Schindler's name as listed on the Court's docket—Schindler Escalator Company—and as provided in Schindler's Opposition—Schindler Elevator Corporation.

[2] Schindler Elevator Corporation filed a separate Opposition "pray[ing] that the Court allow it to adopt the *Opposition to Plaintiffs' Motion to Compel Additional Inspection* of General Growth Properties, Inc., GGP-Mall of Louisiana Holding, L.L.C. and Liberty Mutual Insurance Company and the arguments contained therein and the exhibits attached thereto, as if copied *in extenso*." (R. Doc. 30 at 1). Therefore, the Court will treat the arguments presented in Defendants' Opposition (R. Doc. 29) as those of Schindler, as well.

bag got caught up, entangled or stuck in the escalator or areas appurtenant thereto causing her to lose her balance, become entangled in her handbag, fall and sustain injuries." (R. Doc. 1 at 2-3). Her husband, Roy Jones, "brings claims for loss of consortium" resulting from his wife's injuries. (R. Doc. 1 at 13-14). According to Plaintiffs, Defendants' "improper, hazardous and unsafe operation, design, construction [and] maintenance," of the escalator and its surrounding areas "created an unreasonable risk of harm . . . known or readily discoverable" to Defendants. (R. Doc. 1 at 3). Defendants deny the allegations, claiming "the accident resulted solely from the fault of [Plaintiff's] failure to see what she should have seen and failure to take necessary precautions and actions while utilizing the escalator." (R. Doc. 17 at 1; R. Doc. 13 at 9).

During discovery, an inspection of the escalator was scheduled and took place on May 10, 2012. (R. Doc. 26-1 at 1). Plaintiffs state their expert, Dr. Stephen Carr, "requested to inspect, view and evaluate" the down escalator and its companion up escalator. (R. Doc. 26-1 at 2). However, Plaintiffs claim the inspection that took place was incomplete because Dr. Carr was prevented from: (1) inspecting the "control panel" of the down escalator, containing the "controlling electronics" or "brains of the equipment;" (2) inspecting the "companion up escalator;" and (3) reenacting the incident using Plaintiff's handbag. (R. Doc. 26-1 at 2).

Defendants acknowledge they "agreed to the [May 10, 2012] inspection." (R. Doc. 29 at 2). However, Defendants claim they were unaware of the intended scope of the inspection until May 7, 2012, after the inspection was scheduled. (R. Doc. 29 at 2). According to Defendants, Plaintiffs' counsel explained on May 7, 2012 that the inspection would include:

(1) The start key is needed to enable Plaintiff's expert to start and restart the unit.
(2) The operating speed of the steps and the handrail will be measured.
(3) The step-to-skirt gap will be measured.
(4) Various safety devices will be checked.

> (5) The Plaintiff's experts will conduct various tests including, involving the Plaintiff's purse.
> (6) Still and video photography will be taken.
> (7) The upper machine plate will be lifted and the equipment photographed.
> (8) The corresponding UP units will be similarly examined.
> (9) No steps will be removed.
> (10) Measurements of railings, balustrade and various adjacent and appurtenant areas will be inspected, measured and photographed.

(R. Doc. 29 at 2).[3] Defendants claim they spoke with Plaintiffs on May 8, 2012 and e-mailed Plaintiffs prior to the inspection, objecting to "to the terms Plaintiffs attempted to place on the inspection." (R. Doc. 29 at 3). Nonetheless, Defendants claim that "Plaintiffs' counsel and their experts [still] wanted to partially disassemble the escalator, and also 'reenact' the incident" during the inspection. (R. Doc. 29 at 3).

Unable to resolve their differences over the inspection, Plaintiffs filed their Motion to Compel. (R. Doc. 26).

## II. LEGAL STANDARD

Rule 34(a)(2) provides that: "A party may serve on any other party a request . . . to permit entry onto designated . . . property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." The request "must describe with reasonable particularity each item or category of items to be inspected; [and] must specify a reasonable time, place, and manner for the inspection and for performing the related acts." Fed. R. Civ. P. 34(b)(1)(A)-(B). A Rule 34 inspection must comply with the scope of Rule 26(b)(2)(c) of the Federal Rules of Civil Procedures, which limits a party's ability to obtain discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient" or whose burden "likely outweighs its likely benefit." Before compelling an inspection of the

---
[3] The Court clarifies that neither party has provided this letter to the Court.

responding party's property, "the degree to which the proposed inspection will assist the moving party and its search for truth must be weighed against the hardships and hazards created by the inspection." *Young v. State Farm Fire & Cas. Co.*, No. 06-9871, 2007 WL 2127871, at *2 (E.D. La. July 25, 2007) (citing *Belcher v. Bassett Furniture Indus., Inc*., 588 F.2d 904, 908 (4th Cir. 1978) ("Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted.")).

### III. DISCUSSION

Plaintiffs request the Court to compel a "full and complete inspection of the accident scene" to obtain information relevant to their causes of action. (R. Doc. 26-1 at 1). Plaintiffs allege Defendants were negligent in causing their injuries and are liable for damages under Louisiana Civil Code Articles 2315, 2317 and 2322. (R. Doc. 1 at 6, 11). To sustain a cause of action for negligence under Louisiana Civil Code Article 2315, a plaintiff must prove the defendant: 1) had a duty of care; (2) failed to conform his or her conduct to the appropriate duty of care; (3) engaged in substandard conduct which was a cause-in-fact of the plaintiff's injuries; and (4) caused actual damages. *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 633 (La. 2006)).

To prevail under Louisiana Civil Code Articles 2317 and 2322, a plaintiff must establish that the item which allegedly caused his or her injuries (1) was in the defendant's custody or control, (2) had a vice or defect that presented an unreasonable risk of harm, that (3) the defendant knew or should have known of the vice or defect, and that (4) the damage could have been prevented by the exercise of reasonable care, but (5) the defendant failed to exercise reasonable care. *Jones v. Hancock Holding Co.*, 707 F. Supp. 2d 670, 672 (M.D. La. 2010).

### A. Inspection of the Control Panel

Plaintiffs allege Defendants denied Dr. Carr's request to inspect the escalator's control panel. (R. Doc. 26-1 at 2). Plaintiffs' expert explains that, in his opinion, the control panel constitutes the "brains" of the machine and houses the controlling electronics, which are labeled by "key numbers designating the equipment." (R. Doc. 26-3 at 9). Plaintiffs argue that the "key numbers" are discoverable because the "proper functioning, design, manufacture and maintenance of this escalator is at issue." (R. Doc. 26-1 at 2). For that reason, Plaintiffs urge that inspecting the control panel to obtain the "key numbers" is necessary to determine which of the maintenance records provided correspond to the escalator at issue. (R. Doc. 26-1 at 2).

Defendants object to Plaintiffs' Motion, arguing that Plaintiffs "mischaracteriz[e]" the inspection that actually was allowed. (R. Doc. 29 at 6). According to Defendants, the inspection of the relevant escalator was documented by photographs and consisted of: (1) stopping and starting the escalator, repeatedly; (2) measuring the operating speed and the step-to-skirt gap; (3) testing the manual shutdown button; and (4) lifting the upper machine plate and photographing the equipment beneath the plate. (R. Doc. 29 at 6). Nonetheless, Defendants fail to actually address or object to Plaintiffs' request to inspect and photograph the control panel.

The Court agrees with Plaintiffs. The frequency of the maintenance and repairs to the escalator are relevant to Plaintiffs' causes of action. Defendants have not disputed Plaintiffs' assertion that the key numbers housed within the control panel are necessary to match the provided maintenance records to the relevant escalator.[4] And so, the Court finds that Plaintiffs

---

[4] Plaintiffs' Motion also refers to "numerous sensors and other components of the escalator that need to be evaluated . . ." (R. Doc. 26-1 at 2). No specifics are provided to the Court to make any determination as to why these are relevant to the alleged accident in this case. The Court does not have sufficient information to compel any discovery related to these numerous sensors and other components.

are entitled to inspect and photograph the control panel of the relevant down escalator to obtain the "key numbers."

### B. Inspection of the Companion up Escalator

Plaintiffs allege that Defendants prevented them from inspecting the companion up escalator on May 10, 2012. (R. Doc. 26-1). Plaintiffs fail to specify any reasons or authority to support the relevancy of another escalator that was not involved in the alleged accident. Defendants object to the request as "unnecessary," irrelevant and not likely to lead to the discovery of relevant evidence. (R. Doc. 29 at 5).

Plaintiffs' Motion fails to set forth any basis for compelling the inspection of the up escalator other than a desire "to compare the operation and maintenance." (R. Doc. 26-1 at 2). This blanket request falls short of showing "[s]ome degree of need" for the inspection. *Belcher*, 588 F.2d at 908. There is nothing before the Court to indicate how the maintenance (or lack of maintenance) of an escalator uninvolved in the alleged incident should be discoverable. Plaintiffs have not provided any factual or legal support for compelling inspection of the up escalator and given the causes of action, the Court cannot find any relevance in Plaintiffs' request.

For these reasons, the Court will not compel Defendants to allow an inspection of the companion up escalator.

### C. Re-enactment of the Incident

Plaintiffs ask the Court to compel Defendants to allow a reenactment of the underlying incident on Defendants' premises. (R. Doc. 26-1 at 2). Plaintiffs argue that a reenactment is necessary to evaluate the speed of the escalator and the obstructions, hazards and conditions under which Plaintiffs' handbag "got caught." (R. Doc. 26-1 at 2). Nothing supporting this

assertion is offered. Defendants contend that the reenactment requested on May 10, 2012 "came as a surprise in light of the earlier discussions" between the parties. (R. Doc. 29 at 3).

Additionally, Defendants argue the reenactment is both dangerous and unnecessary where "[a]ll parties have a video of exactly what occurred on December 21, 2010." (R. Doc. 29 at 4). Defendants explain that all parties have been provided a copy of the Mall of Louisiana's surveillance tape of the incident captured by two "closed circuit television cameras . . . [located] at the entrances and exits of the escalators." (R. Doc. 29 at 4). According to Defendants, the video footage clearly depicts the incident and a reenactment would only serve to manufacture unfairly prejudicial evidence. (R. Doc. 29 at 4).

Significantly, the video is not mentioned in Plaintiffs' Motion to Compel and Plaintiffs have not represented to the Court that it does not adequately depict the events that transpired on December 21, 2010. Plaintiffs' expert report indicates that Dr. Carr has viewed the video but does not indicate any insufficiencies. (R. Doc. 26-3 at 6).

After weighing "the degree to which the proposed inspection will assist [Plaintiffs] and [their] search for truth . . . against the hardships and hazards" that would be imposed on Defendants, the Court is not persuaded by Plaintiffs' asserted need for a reenactment. *Young*, 2007 WL 2127871, at *2. The Court finds that any reenactment conducted today would not be necessary or relevant to determine the events that transpired over two years ago, considering the *actual* incident is documented on video. *Mobley v. Edison Chouest Offshore, Inc.*, No. 95-3120, 1996 WL 363496, at *1 (E.D. La. June 27, 1996) ("[I]t appears that the information from which plaintiff seeks to develop a demonstrative aid . . . may be available from LOOP through more convenient, less burdensome sources, including the existing diagrams, manuals and videotape.").

Moreover, the burden and potential liability placed on Defendants by allowing a reenactment of the incident on Defendants' property significantly outweighs Plaintiffs' need to create a reenactment video to accompany the video of the actual incident. As such, the Court will not compel Defendants to permit a reenactment of the incident as requested by Plaintiffs.

## IV. CONCLUSION

For the reasons given above, the Court finds that Plaintiffs' Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**. Each party shall bear its own costs regarding the bringing of this Motion and any additional inspection permitted in accordance with this Order.

Signed in Baton Rouge, Louisiana, on June 13, 2013.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**